Clara M. J. Farson, Appellee, v. Arthur J. Shoger, Appellant.

Gen. No. 7,496.

1. VENDOR AND PURCHASER—*abandonment of contract by purchaser.* Where, upon objections being made to the title to property described in a contract, the purchaser notified the seller that he did not want the property and repudiated the contract, and the seller acquiesced, and thereafter, after considerable delay, the purchaser again took up the matter with the seller, the former contract could not be relied on, under the circumstances, in a subsequent suit by the seller for the balance of purchase money.

2. VENDOR AND PURCHASER—*application of forfeited earnest money as recognition of prior abandoned contract.* Where, after a former contract for the sale of real estate had been repudiated by the purchaser and such repudiation had been acquiesced in by the seller and the earnest money had been retained by him under the terms of the contract, and where subsequently the purchaser again took up the matter and a sale was negotiated, the allowance of said amount of such earnest money to the purchaser could in no sense be considered as a recognition of the former contract, in an action by the seller for the balance of the purchase price.

3. VENDOR AND PURCHASER—*sufficiency of title conveyed.* Where a former contract for the sale of real estate had been repudiated by the purchaser and such repudiation had been acquiesced in by the seller and the matter had been taken up anew and a conveyance made after new negotiations, such conveyance was held subject to a deed to the strip in controversy, made after the execution of the former contract, where the deed expressly provided that the conveyance was made subject to the rights of parties in possession.

4. VENDOR AND PURCHASER—*stopping payment of purchase money checks after conveyance as defeating vendor's right of action for price.* Stopping payment of checks turned over to the seller in payment of the balance of the purchase price of realty, upon the delivery of the deed, could not defeat the seller's action for the amount of the checks, where the purchaser continued to hold title and in the absence of any offer to reconvey.

Appeal by defendant from the Circuit Court of Kane county; the Hon. WILLIAM J. FULTON, Judge, presiding. Heard in this court at the April term, 1925. Affirmed. Opinion filed June 8, 1925.

OLNEY C. ALLEN, for appellant.

HARRY G. HEMPSTEAD and D. A. GREEN, for appellee.

MR. JUSTICE PARTLOW delivered the opinion of the court.

Appellee, Clara M. J. Farson, began an action of assumpsit in the circuit court of Kane county against appellant, Arthur J. Shoger, to recover $1,400 claimed to be the balance due upon the purchase price of a piece of real estate, together with protest fees of $2.85 on two checks given in payment thereof upon which the payments had been stopped. There was a trial by the court without a jury, judgment in favor of appellee for $1,402.85, and this appeal was prosecuted.

Appellee was the owner of a piece of land in Kane county of irregular shape containing about one acre, located at the junction of three concrete roads, one leading to De Kalb, one to Geneva and the other to St. Charles. On the north side of the land was a concrete road extending east and west, and on the west side of the land was another concrete road extending north and south, which roads intersected at the northwest corner of the premises. Beginning a short distance south of this intersection, on the north and south road, there was a third concrete road which extended in a curve to the northeast and connected with the east and west road a short distance east of its intersection with the north and south road. These three concrete roads left a piece of land containing about one-third of an acre, almost triangular in shape, lying in this space between these three roads. This triangular piece is in controversy in this case, and the ques-

tion is whether it was included in the contract of sale executed between appellant and appellee, and whether it was subsequently conveyed by the deed from appellee to appellant together with the balance of the land owned by appellee. It is the contention of appellant that this triangular piece had been conveyed to the State of Illinois and was owned by the State at the time his contract with appellee was executed and at the time she conveyed the premises to him, and for that reason the most important part of the premises described in the contract and conveyed by the deed did not become his property, and therefore he was under no obligations to accept the deed given him by appellee. He also contends that the title to the premises was not merchantable as provided in the contract.

On January 12, 1923, appellee and her husband entered into a written contract, by the terms of which she agreed to convey, by warranty deed to appellant, the acre of land in question, free and clear of incumbrance. The land is described in the contract by metes and bounds, and excepts therefrom that part thereof granted and dedicated on September 2, 1921, to the State of Illinois for use as a public highway. It appears from the evidence that at the time this contract was entered into the curved concrete road extending northeast and southwest across the northwest corner of this land had been constructed under a deed conveying that strip to the State, which deed was dated September 2, 1921. The contract further provided that the abstract of title furnished by appellee was to show a merchantable title. The consideration was $1,500, of which $100 was paid at the time of the execution of the contract, and the balance of $1,400 was to be paid upon the furnishing of a merchantable abstract of title. The contract further provided that in case of the failure of appellant to make the payments or perform the covenants, the contract might, at the option of appellee, be forfeited and determined,

in which case all payments made should be retained by appellee in satisfaction of damages. Appellee testified that at the time the contract was signed she told appellant she could not sell the triangular piece because she had deeded it to the State of Illinois. Appellant admitted that appellee did tell him this but he testified that she did not so inform him until after the contract was signed, and he told her the title was in her and that the contract covered it.

After the contract was entered into, appellee furnished an abstract of title to which objection was made by appellant, whereupon, on March 21, 1923, appellee filed her bill in the circuit court to quiet title, and on August 6, 1923, a decree was entered quieting the title as prayed in the bill. On February 12, 1923, appellant wrote a letter to appellee in which he said: "There seems to be some question as to whether that triangular piece of ground between the cement roads in question is owned by private interests or by the State. The abstractor, Mr. DeVoll, is of the opinion that said triangular piece of ground between the State roads is owned by private interest. In that case the title to said triangular piece of ground would vest in you until you deliver a deed to me. I expect to have Mr. Roy Wells, the county surveyor, survey the land in question for me, so I will know definitely just what land I am getting. I am also taking this matter up with the State highway commissioners for the purpose of determining just how things stand."

On March 12, 1923, appellant wrote to appellee as follows: "After having my attorney look the abstract over carefully, I have run into a good many objectionable features which has changed my opinion about buying your property. So I have decided that I cannot use your property." The letter suggested that the $100 advance payment be divided equally between them. On April 16, 1923, appellee deeded to the State of Illinois a strip in the northwest corner for road purposes. Appellee claims that on Septem-

ber 2, 1921, she had deeded a strip at the northwest corner to the State for road purposes and on it had been constructed this circular concrete road connecting the two roads; that afterwards it was discovered that there was a mistake in the description, and the deed of April 16, 1923, was made to correct this mistake. However this may be, it clearly appears that before the deed was made to the State on April 16, 1923, and before the contract was executed between these parties on January 12, 1923, that the concrete road connecting the two roads had been built.

Nothing further seems to have been done about this matter between appellant and appellee, and in the winter of 1923, appellee went to California where she remained for several months. Upon the return of appellee from California, appellant, on April 14, 1924, in company with his father and the customer for whom he claimed to be purchasing the land, called on appellee to buy the land. As a result of these negotiations, on that date, a deed was delivered to appellant and accepted by him conveying the land to him. He gave appellee two checks which are in controversy in this case, one being for $1,300 on the Aurora National Bank, and the other for $101.98 on the First National Bank of Aurora. It is conceded by appellant in his reply brief that the land described in the contract of January 12, 1923, was the same land covered by the deed, and that both covered the triangular piece, but it is the contention of appellant that the deed did not convey the triangular piece for the reason that, subsequent to the date of the contract, appellee had conveyed it to the State of Illinois.

Appellant, who is a real estate broker, testified that at the time the deed was delivered to him by appellee he told appellee that he had a customer who wanted the land for the purpose of erecting an oil station and restaurant, and that on April 14, 1924, when appellant in company with his customer and father called at appellee's house, appellant asked appellee if the

land he was buying extended over to a certain adjacent confectionery stand, and she replied "just about." Appellee testified that at the time the deed was delivered by her to appellant, appellant inquired of her as to where the line was in regard to a certain confectionery stand and she replied, "You will have to look at the map or blue print—I do not know how long it is," and he said, "Are those two small signs north of the confectionery stand on your property" and she replied, "No, the only sign on my property is the Ford sign, quite to the north line," and he asked her how far her line was from that place and she said, "Not so very far."

After the deed was delivered and the checks had been given to appellee, appellant testified he went to the land, and with a tape measured it, and discovered that the land described in the deed was from 150 to 200 feet from the confectionery stand. Immediately he called appellee by telephone, told her the result of his measurements, and that his client did not want the land under those circumstances. He requested her not to cash the checks, but she said it was too late, so the next day he stopped payment on the checks. There were certain conferences later between the parties, but they could not come to any settlement, and appellee began suit to recover the amount represented by the checks, being the balance of the purchase price.

In determining whether the judgment as rendered should be affirmed, it will not be necessary to consider many of the questions of law argued in the briefs. On January 12, 1923, the parties entered into a valid contract of sale. This contract contained all of the terms of sale and was capable of enforcement by or against the parties thereto. An abstract of title was furnished to which appellant objected on the ground that it did not show a merchantable title. Without waiting for appellee to quiet the title, appellant, on March 12, 1923, wrote the letter to appellee in which he told her he had decided he could not use the prop-

erty and asked that the $100 advance payment be divided. If appellee had seen fit to hold appellant to his contract there might be a serious question as to appellant's right to escape liability by his refusal to take the property. It is apparent, however, that appellee accepted this refusal of appellant as a termination of the contract. She acquiesced in it, and took no further steps to complete it, or to force appellant to comply with its terms. She later filed her bill to quiet her title and secured a decree under her bill. This was not, however, for the purpose of completing the contract, for she took no further steps to that end. On April 16, 1923, appellee deeded the strip at the northwest corner to the State. It is possible that this latter deed covered more land than the original deed, but this deed was notice to appellant of its contents. On April 14, 1924, when appellant together with his father and customer called upon appellee, it certainly cannot be successfully contended that he was under contract with appellee to purchase the land. Fifteen months had elapsed since the contract was entered into, and almost thirteen months had elapsed since appellant had repudiated the contract, during which time practically nothing had been done to carry out its terms, and both parties apparently considered it as of no force and effect. If appellant had attempted to enforce his contract by a bill for specific performance, there is no question but what the letter written by him on March 12, 1923, together with the other facts and circumstances in evidence, would have been a complete bar to such a suit, and for that reason we hold that on April 14, 1924, when appellant called on appellee, no contract existed between them with reference to the sale of this land.

On April 14, 1924, when appellant called on appellee, he knew all about the land and the conditions of the title. The contract of January 12, 1923, expressly excepted from the description the part of the land deeded to the State on September 2, 1921. Appellant

in his letter of February 12, 1923, told appellee there seemed to be some question as to whether the triangular piece between the cement roads was owned by private interests or by the State. He further told her he intended to employ surveyors to ascertain exactly what land was included under the contract. The deed of April 16, 1923, to the State had been executed, it was probably upon record, and, if it was, it would constitute notice to appellant as to its contents. For almost fifteen months appellant had known the description of the land he wanted to buy, and consequently he had every opportunity to investigate the boundaries and ascertain just what land was included. He also knew the exact condition of the title and that a decree had been entered to quiet it. With all of these facts in his possession, without any contractual relation existing between him and appellee, on April 14, 1924, he called on appellee for the purpose of buying the land, and he did buy it. The only terms of the original contract which it could possibly be claimed were taken into consideration were the purchase price of $1,500, and that appellee allowed him credit for the $100 which he had paid at the time the contract was entered into. This $100 was a mere gift to appellant, or a reduction on the price originally agreed upon. It belonged to appellee after the contract was repudiated and could in no sense be considered as a recognition of the contract. Appellee delivered to appellant a deed, together with the abstract of title, and appellant gave appellee the two checks. These acts completed the transaction. The deed from appellee to appellant expressly provided that the conveyance was made subject to the rights of parties in possession of said premises. At that time the State of Illinois was presumably in possession of the premises covered by its deed of April 16, 1923, and the deed from appellee to appellant was made subject to the rights of the State of Illinois. The effect of the delivery of the deed and the giving of the checks was to vest appel-

lant with the title. Appellant, by tendering the deed back to appellee, or even destroying it, would not reinvest appellee with the title. There is no evidence of any offer by appellant to reconvey by deed to appellee after the date of the delivery of the deed of April 14, 1924. After appellant secured the title he could not defeat appellee's recovery of the $1,400 by merely stopping payment on the check, and he will not now be heard to complain, in this suit, that the title is not merchantable. As long as he had title appellee had a cause of action against him for the amount of the checks.

We find no reversible error and the judgment is affirmed.

*Judgment affirmed.*